UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT,** | CIVIL ACTION NO. 2:16-CV-00785 |
| **Plaintiff,** | JUDGE MINALDI |
| v. | |
| **IFG PORT HOLDINGS, LLC,** | MAGISTRATE JUDGE KAY |
| **Defendant.** | |

## MEMORANDUM ORDER

Before the court is the Motion for Dismissal without Prejudice (Rec. Doc. 4) filed by defendant IFG Port Holdings, LLC (IFG). Lake Charles Harbor & Terminal District (the Port) filed an Opposition (Rec. Doc. 8). IFG filed a reply (Rec. Doc. 9), and the Port filed a sur-reply (Rec. Doc. 12). For the following reasons, the Motion to Dismiss (Rec. Doc. 4) is **DENIED**.

### FACTS & PROCEDURAL HISTORY[1]

The current suit was filed by the Port on June 7, 2016 regarding a Throughput Agreement (TPA) between the parties. The current suit will be referred to as the "TPA Action." Another suit involving the same parties was filed by IFG on January 29, 2016 regarding a lease agreement.[2] The January 2016 suit will be referred to as the "Lease Action." In the Lease Action complaint, IFG asserts (1) a breach of lease claim, (2) a negligence claim based on the Port's handling of the lease terms, (3) a Louisiana Unfair Trade Practices Act based on the Port's threats to terminate the lease agreement, (4) an Abuse of Rights claim based on the Ports manner in which it asserted its rights under the lease agreement, (5) a detrimental reliance and/or fraudulent inducement

---

[1] All facts unless otherwise noted are taken from the plaintiff's complaint (Rec. Doc. 1).
[2] IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal District, 2:16-cv-00146 (Rec. Doc. 1).

1

claim based on the Port's assertions regarding a lease responsibility,[3] and (6) that it does not owe money under the lease agreement's minimum annual guarantee (MAG) payment provision.[4]

Under the TPA Action, the terms of the TPA agreement included (1) who would be allowed to store product at IFG's grain export terminal facility, (2) a minimum annual guarantee (MAG) payment[5] that would be paid by the Port to IFG under certain circumstances, and (3) the right of the Port to terminate the TPA if it made a MAG payment covering the 2015 calendar year. Based on the provisions in the TPA, IFG invoiced the Port on January 8, 2016 for a MAG payment. The Port paid the MAG payment in April 2016 and sent IFG a notice that it was terminating the TPA. In response, IFG informed the Port that it owed interest on the late payment, that the notice of termination was insufficient, and that the Port owed a partial MAG payment for 2016. Shortly after, the Port paid interest on the overdue MAG payment using January 31, 2016 as the accrual date based on a provision of the TPA. The Port also disputed IFG's right to a partial MAG payment and reasserted its right to terminate the TPA. In response, IFG asserted that the proper interest accrual date under the TPA was January 23, 2016 based on a different clause of the TPA. IFG also maintained that the Port owed it a partial MAG payment and that the Port's notice of dismissal was insufficient. In its complaint the Port asserts two main claims (1) the TPA has been properly terminated and all payments have been made and alternatively, (2) the TPA is void and no payments were ever due.

IFG has filed a Motion to Dismiss (Rec. Doc. 4), alleging that the TPA Action is a compulsory counterclaim to the Lease Action.

---

[3] Compl., IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal District, 2:16-cv-00146 (Rec. Doc. 1).
[4] First Am. Compl., IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal District, 2:16-cv-00146 (Rec. Doc. 98).
[5] The TPA MAG payment is different than the lease agreement MAG payment provision. They are based on different circumstances, and calculated differently. *Compare* Throughput Agreement (Rec. Doc. 1-2), *with* Ground Lease Agreement, IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal District, 2:16-cv-00146 (Rec. Doc. 1-3).

## LAW & ANALYSIS

Under Federal Rules of Civil Procedure, a counterclaim is compulsory if at the time of service, it arises out of the same transaction or occurrence as the opposing party's claim and "does not require adding another party over whom the court [does not have] jurisdiction." Fed. R. Civ. P. 13(a). "The test for whether a claim is compulsory is:

> (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as the defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. An affirmative answer to any of the four questions indicates the claim is compulsory.

*Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 483 (5th Cir. 1996) (quoting *Park Club, Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir.1992)). A party cannot raise a compulsory counterclaim in a separate action. *See New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998). However, "the party need not assert a counterclaim that has not matured at the time he serves his pleading." *Id.*

While IFG argues that the two agreements are "logically related," because there would be no TPA without the lease agreement,[6] the agreements themselves can be read independently.[7] The TPA Action is based purely on the Throughput Agreement, and it can be resolved independently from the court's determination in the Lease Action. Likewise the Lease Action can be resolved independently from the court's determination of the TPA Action because it is based on a different document and different set of operative facts. While both the lease and the TPA were signed the same day by the same parties, they are not the same agreement, and the

---

[6] IFG's Reply (Rec. Doc. 9).
[7] Throughput Agreement (Rec. Doc. 1-2); Ground Lease Agreement, IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal District, 2:16-cv-00146 (Rec. Doc. 1-3).

3

facts giving rise the disputes about each agreement are not the same. Therefore, the TPA Action and the Lease Action do not arise out of the same transaction or occurrence.

Additionally, the Port's claims in the TPA Action that it validly terminated the agreement, it properly paid interest, and it does not owe any partial MAG payment were not mature when the Port filed its Answer in the Lease Action on March 15, 2016.[8] The earliest that the Port would have known that these terms and their applications were contested was April 2016.[9] Therefore, even if the claims did arise out of the same transaction or occurrence as the Lease Action claims, they would not be compulsory counterclaims because they were not mature when the Port filed its initial pleading in the Lease Action. *See New York Life Ins. Co.*, 142 F.3d at 879. Accordingly,

**IT IS ORDERED** that IFG's Motion to Dismiss (Rec. Doc. 4) be and hereby is **DENIED.**

Lake Charles, Louisiana, this 14 day of Sept, 2016.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[8] Answer, IFG Port Holdings, LLC v. Lake Charles Harbor & Terminal District, 2:16-cv-00146 (Rec. Doc. 37).
[9] Compl. (Rec. Doc. 1).

4