UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LAKE CHARLES HARBOR & TERMINAL DISTRICT** | : | **CIVIL ACTION NO. 16-cv-785** |
| **VERSUS** | : | |
| **IFG PORT HOLDINGS, LLC** | : | **MAGISTRATE JUDGE KAY** (By Consent) |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment filed by plaintiff, Lake Charles Harbor & Terminal District ("the Port"). Doc. 17. The motion is opposed by defendant, IFG Port Holdings, LLC ("IFG). Doc. 19.

For the following reasons the motion will be **GRANTED** in part and **DENIED** in part.

### I.
#### FACTS AND PROCEDURAL HISTORY

This suit was initiated as one for Declaratory Judgment and Related Relief. Doc. 1. The Port claims jurisdiction is proper in this matter based on diversity of citizenship, 28 U.S.C. § 1332, and venue is proper as a substantial part of the events giving rise to the claim occurred in this district.[1] The Port alleges that it entered an agreement, a "Throughput Agreement," ("TPA") in connection with a larger Ground Lease Agreement with IFG, both agreements effective August 15, 2011. Doc. 1, p. 3. For reasons detailed in the complaint the Port seeks a declaration that the TPA has been effectively terminated and that it owes no additional sums thereunder. *Id.* at pp. 9-11. The Port also seeks alternative relief not pertinent to the motion under consideration.

---

[1] These allegations are admitted by IFG. Doc. 14, p. 1.

IFG answered the complaint and asserted a counterclaim. Doc. 14. IFG argues in answer that, for reasons given, the agreement has not been terminated. In its counterclaim it seeks a judicial declaration that the Port's attempts to terminate the TPA have been ineffective and that amounts owed to it under the TPA continue to accrue. Doc. 14, p. 16. The Port also claims it is owed attorney fees and costs under the contract. Doc. 14, p. 17, ¶ 66.

Through this Motion for Summary Judgment the Port asks us to conclude that (1) the Throughput Agreement was terminated and (2) it owes no additional sums to IFG thereunder. Doc. 17. In opposition thereto IFG maintains the TPA remains in full force and effect and that additional sums are owed and continue to accrue thereunder. Doc. 19, pp. 16-18. Alternatively it alleges that, even if the TPA was effectively terminated, additional sums are due. *Id.* at p. 19. Finally it argues that, regardless of the outcome of our decision on the motion, it is owed attorney fees and costs under the contract. *Id.*

## II.
### LAW AND ANALYSIS

### A. The Law

A motion for summary judgment should be granted when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A dispute is genuine "only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). "Under Rule 56, summary judgment must be entered against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Baton Rouge Oil & Chem. Workers Union v ExxonMobil Corp.*, 289 F.3d 373, 375-76 (5th Cir. 2002) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th

Cir. 1994)). When ruling on a motion for summary judgment the district court draws all reasonable inferences in favor of the nonmoving party. *Coury v. Moss*, 529 F.3d 579, 584 (5th Cir. 2008).

In a diversity action such as this the court must apply Louisiana choice-of-law rules. *Cole v. Gen. Motors Corp*, 484 F.3d 717, 724 (5th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Louisiana law the parties generally can choose which law governs their agreement. LA. CIV. CODE art. 3540. The contract between these parties provides that Louisiana law applies. Doc. 1, att. 2, p. 12 ¶ 28.

Under Louisiana law the interpretation of a contract can be either a question of law or fact. "The determination of whether a contract is clear or ambiguous is a question of law." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 590 (La. 2007). Interpretation of an unambiguous contract can be decided on a motion for summary judgment. *Greenwood 950, L.L.C. v. Chesapeake La. L.P.*, 683 F.3d 666, 668 (5th Cir. 2012) (citing *Sims, supra,* at 590). "However, if a court determines as a matter of law that a contract is ambiguous, then extrinsic (parole) evidence may be used to determine the true intent of the parties, and determining the intend of the parties becomes, in part, a question of fact." *LFI Fort Pierce, Inc. v. Acme Steel Bldg.,* 200 So.3d 939, 946 (citing *Carter v. BRMAP*, 591 So.2d 1184, 1188-89 (La. App. 1 Cir. 1991)). Because the intent of the parties in an ambiguous contract is a question of fact, the court should only grant summary judgment if there is no material issue of fact as to the parties' intent. *Id.*

**B. Application of Law to Facts of This Case**

The preamble to the TPA provides that its purpose was to allow the Port to secure the use of the terminal being constructed by IFG "to specific and Defined Users" for the Port's account. Doc. 1, att. 2, p. 1. "Defined Users" were to be "only those companies listed in Exhibit 'A' [t]hereto and any companies which are acceptable to [IFG] and [the Port] in their individual

discretion." *Id.* at p. 2, ¶ 1.11. The agreement obligated the Port "each Contract Year" to "pay Throughput charges based on a minimum Throughput of 75,000 Metric Tons of Product, hereafter called the Minimum Annual Guarantee ("MAG"). *Id.* at p. 5, ¶ 5.6. That same paragraph also states that

> if the actual Throughput for a given Contract Year is less than 75,000 Metric Tons, the [Port] shall pay, within thirty (30) days after the end of the Contract Year, a fee equal to the number of Metric Tons by which the actual Throughput for such Contract Year is less than 75,000 Metric Tons, multiplied by the $3.50 per Metric Ton . . . .

Should the Port be required to pay any sums under paragraph 5.6, the Port "may, after making such payment, and upon thirty (30) days written notice to [IFG], terminate this Agreement without any penalty or cost to [the Port]." *Id.* at ¶ 4.

There is no question of material fact and all parties agree that the facility was placed into operation on July 15, 2015.[2] The parties also agree that, as defined by the contract, the initial "Contract Year" was from July 15, 2015, through December 31, 2015.[3] For reasons hotly disputed between the parties in particulars irrelevant to our consideration, there was no Throughput for the initial contract year. Accordingly all agree that a MAG was due and the amount due under the contract was $122,260.27. That amount was paid to IFG by the Port on or about April 13, 2016. Doc. 1, att. 2, p. 21.

What is in dispute is the amount of interest due IFG on the MAG payment, a dispute that cannot be resolved by a plain reading of the contract.

Paragraph 5.4 of the TPA states that "[a]ll amounts owed" under the contract "shall be payable in accordance with Section 8. [The Port] shall pay interest on all past due amounts hereunder, calculated at the prime rate set by JP Morgan Chase for each calendar day or part of a

---

[2] See ¶ 6 of the original complaint, Doc. 1, p. 2, admitted to by IFG at Doc. 14, p. 2.
[3] See ¶ 22 of the original complaint, Doc. 1, p. 6, admitted to by IFG at Doc. 14, p. 6

calendar day beyond the due date." Doc. 1, att. 2, p. 5. Conversely paragraph 8.3 of the TPA states that "[a]ny late payments will be subject to a penalty and will accrue interest at a 12% annual rate of interest on the unpaid amount until payment is confirmed to have been received and credited to [IFG's] bank account. *Id.* at p. 6. So there is a conflict in the contract itself with respect the rate to be charged for late payment, whether it be "at the prime rate set by JP Morgan Chase for each calendar day or part of a calendar day beyond the due date" or "at at a 12% annual rate of interest on the unpaid amount until payment is confirmed to have been received."

The contract is also internally inconsistent on when payment for the MAG is due. Paragraph 5.6, which provides for the MAG, states it is due "within thirty (30) days after the end of the Contract Year." But, as we note above, paragraph 5.4 of that same contract is clear that "[a]ll amounts owed . . . shall be payable in accordance with Section 8" and section 8.2 says IFP must receive payment "no later than 15 calendar days from the date of an invoice . . . ." Doc. 1, att. 2, p. 6.

The parties agree that the Port has paid IFG the sum of $2,934.25 as interest on the MAG.[4] The parties agree on nothing else. Further exploration of this issue, given the internal inconsistencies of the contractual provisions, will require factual inquiry as to intent of the parties and resolution of the issue is therefore not available through summary judgment.

Also in dispute is whether the TPA has been effectively terminated. The contract is clear on this point. Section 4 of the TPA says the Port may, after making a payment under section 5.6 of the agreement (the MAG), "and upon thirty (30) days written notice to [IFG], terminate this Agreement without any penalty or cost to [the Port]." Doc. 1, att. 2, p. 5, ¶ 4. As we note above

---

[4] See ¶ 26 of the original complaint, Doc. 1, p. 7, admitted to by IFG at Doc. 14, p. 7.

there is no issue as to the fact the MAG was paid.  The parties agree that correspondence was sent on April 13, 2016, from the Port to IFG notifying the latter of the Port's intent to cancel the TPA.[5]

In opposition to the Motion for Summary Judgment IFG maintains that the TPA has not been terminated because the Port continues to owe it money under the agreement.  Doc. 19, pp. 16-18.  It is the position of IFG that the Port is unable to terminate the TPA unless and until it (IFG) has been paid all sums owed, including charges for late payments.  Nothing in the contract could lead us to such a conclusion.

As we note above, the contract is very clear on this point.  It states the TPA may be terminated by the Port "upon thirty (30) days written notice" to IFG if it "is required to pay to [IFG] any amounts under Section 5.6 of this Agreement."  Doc. 1, att. 2, p. 5.  Section 5.6 of the contract provides for the MAG.  As we state above, the Port was obligated to pay the MAG; it has done so, therefore, it is entitled to cancel the TPA under Section 4.  The only requirement for cancellation of the TPA is written notice and that notice was given.

TPA argues alternatively in the event we find that termination to be effective that it would nevertheless be owed a MAG on a pro-rated basis for the year 2016.  Doc. 19, p. 19.  We find no basis for such a claim under the contract.  The Minimum Annual Guarantee as defined in Section 5.6 of the contract becomes due at the end of the Contract Year which, according to Section 1.6 of the contract, ends December 31 of the year in question.  Nothing in the contract would lend itself to a payment on a pro-rated basis as suggested.

---

[5] See ¶ 35 of the Original Complaint, Doc. 1, p. 10.  Defendant admits in its answer that the correspondence was sent. Doc. 14, p. 11.  The correspondence is found at Doc. 1, Att. 2, p. 20.

## III.
### CONCLUSION

For the foregoing reasons we conclude that the Motion for Summary Judgment [doc. 17] should be **GRANTED** in part and declaratory judgment issued that the Throughput Agreement previously existing between the parties was effectively terminated. For reasons given above the remainder of the motion is **DENIED.** We have not been asked to rule upon the issue of what amount, if any, is owed IFG as attorney fees and costs under the contract as set forth in its counter-claim and therefore that matter remains a viable claim.

THUS DONE AND SIGNED in Chambers this 16th day of January, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE